175 P.3d 206

STATE of Idaho, Plaintiff–Respondent,

v.

Edward John WOLFRUM, Defendant–Appellant.

No. 31557.

Court of Appeals of Idaho.

Sept. 6, 2007.

Review Denied Jan. 23, 2008.

Molly J. Huskey, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Ralph R. Blount, Deputy Attorney General, Boise, for respondent.

LANSING, Judge.

Edward John Wolfrum was convicted of perjury for falsely describing his credentials while giving testimony as an expert witness in a criminal trial. On appeal, he contends that he should receive a new trial because the jury instructions were confusing and inconsistent with the language of the charging information. We affirm.

## I.

## BACKGROUND

In 2000, Wolfrum testified as an expert witness on behalf of a defendant in a Cassia County criminal case. He testified that in his opinion, an audio recording upon which the State relied as evidence of the defendant's guilt had been altered by editing. As part of his qualifications as an expert witness, Wolfrum testified that he held a Ph.D. in advanced mathematics from the "Michigan Institute of Technology." Wolfrum was later charged with perjury because he held no such degree.

There apparently is no institution named the Michigan Institute of Technology. During his trial in the present case, Wolfrum testified that when he referred to "Michigan Institute of Technology," he had meant the Michigan Technological University. The

registrar from Michigan Technological University (MTU) testified that the institution had no record of Wolfrum ever attending or being registered at MTU, much less having received a degree, and that the institution offered no graduate degree in advanced mathematics. Testifying in his own defense, Wolfrum said, in essence, that he had believed that he held a Ph.D. from the institution because he had submitted a dissertation by mail, he had received a letter in response from MTU saying his paper had been accepted as a dissertation and that he should be prepared to defend it, and unnamed members of the institution thereafter referred to him as "doctor" from time-to-time. Wolfrum did not produce the letter nor any degree or other documentation of any affiliation with MTU. The jury returned a guilty verdict. This appeal followed.

Wolfrum asserts that jury instructions defining the mental element for perjury created an impermissible variance from the language of the charging information or constituted a constructive amendment to the information. He also asserts that other jury instructions were confusing, to his prejudice, and that the prosecutor engaged in misconduct during closing argument.

## II.

## ANALYSIS

### A. Variance or Constructive Amendment

Wolfrum was charged with a violation of Idaho Code § 18–5401, which specifies that perjury is committed by a person who, having taken an oath to testify truthfully, "wilfully and contrary to such oath, states as true any material matter which he knows to be false." The charging information alleged that Wolfrum committed perjury by making statements under oath regarding the Ph.D., "which statements he well knew to be false."

■ At Wolfrum's trial, the district court instructed the jury on the section 18–5401 definition of perjury. The Court also gave Instruction No. 21 which, quoting from I.C. § 18–5408, stated: "An unqualified statement of that which one does not know to be true is equivalent to a statement of that which one knows to be false." In a third instruction, No. 19, the court explained the term "wilfully" as it is used in section 18–5401:

An essential element of perjury is that the statement be made wilfully by a person who knows or believes that the statement is false *or is aware that he is ignorant of the truth or falsity of his statement.* A statement made under an honest mistake and in the belief that it is true, is not perjury, even though the statement be false.

The word "wilfully" as used in these instructions means the making of the alleged perjured statement with the consciousness that it was false, *or with the consciousness that the maker thereof did not know that it was true,* and with the intent that it should be received as a statement of what was true.

An act is "willful" or done "wilfully" when done on purpose. One can act wilfully without intending to violate the law, to injure another, or to acquire any advantage.

Although Wolfrum did not object to these instructions in the trial court, he now contends that Instruction Nos. 19 and 21 are inconsistent with the allegations of the charging information that Wolfrum made a statement under oath, "knowing that said statement was false." Wolfrum argues that Instruction Nos. 19 and 21 constitute a variance from the information and/or a constructive amendment to the information. He argues that this variance or constructive amendment of the charge against him constitutes fundamental error[1] that this Court

---

1. The Idaho Supreme Court has defined fundamental error as follows:

Error that is fundamental must be such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which

no court could or ought to permit him to waive.

*State v. Christiansen,* 144 Idaho 463, 470, 163 P.3d 1175, 1182 (2007). In *Christiansen,* the Court recognized that it has also utilized other definitions of fundamental error:

At other times, we have defined fundamental error as "[a]n error that goes to the founda-

should address notwithstanding the lack of an objection below.

Idaho Criminal Rule 30(b) provides that "[n]o party may assign as error the giving of or failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict...." This restrictive language was added to Rule 30 in July 2004. Prior to that amendment, the Idaho appellate courts routinely allowed challenges to jury instructions to be raised for the first time on appeal. *See State v. McLeskey*, 138 Idaho 691, 694–95, 69 P.3d 111, 114–15 (2003); *State v. Raudebaugh*, 124 Idaho 758, 762, 864 P.2d 596, 600 (1993). For purposes of this appeal, we will assume, *arguendo*, that review of jury instructions for fundamental error remains permissible notwithstanding the amendment to Rule 30(b), and we will further assume that errors of the type claimed by Wolfrum could rise to the level of fundamental error.[2]

A variance between the charging document and a jury instruction requires reversal of a conviction only where the defendant was deprived of fair notice of the charge against which he must defend or is left open to the risk of double jeopardy. *State v. Jones*, 140 Idaho 41, 49, 89 P.3d 881, 889 (Ct.App.2003); *State v. Windsor*, 110 Idaho 410, 417–18, 716 P.2d 1182, 1189–90 (1985). A variance is fatal if it amounts to a "constructive amendment." *Jones*, 140 Idaho at 49, 89 P.3d at 889. A constructive amendment occurs if a variance alters the charging document to the extent that the defendant is tried for a crime of a greater degree or a different nature. *Id.; State v. Colwell*, 124 Idaho 560, 566, 861 P.2d 1225, 1231 (Ct.App. 1993); *United States v. Dipentino*, 242 F.3d 1090, 1094 (9th Cir.2001).

An argument that was essentially identical to that made by Wolfrum—that a jury instruction quoting I.C. § 18-5408 created an impermissible variance from the charging document's allegation that the defendant knew the statement was false—was rejected by this Court in *State v. McBride*, 123 Idaho 263, 846 P.2d 914 (Ct.App.1992). We there explained:

> I.C. § 18-5408 does not create "another kind of perjury," as claimed by McBride, or expand the charge beyond that contained in the information. Rather, when read together with I.C. § 18-5401, it is evident that I.C. § 18-5408 simply defines further the single offense of perjury.

*Id.* at 266, 846 P.2d at 917 (footnote omitted). Although Wolfrum urges us to overrule *McBride*, we find no error in its analysis. The proviso in section 18-5408 that is quoted in Instruction No. 21 is simply a further explication of the scope of the offense of perjury defined in section 18-5401. This statutory explanation of what qualifies as a "false" statement for purposes of perjury, is a part of the overall statutory scheme governing the offense of perjury; it is within the Idaho Code chapter that defines perjury and subornation of perjury and specifies the permissible punishment for the same. Therefore, Instruction No. 21 does not alter the charge alleged in the information.

The challenged language from Instruction No. 19 is drawn verbatim from an instruction employed in *McBride*. It reiterates the substance of Instruction No. 21 and draws the relationship between the provisions of I.C. § 18-5408 (expressed in Instruction No. 21) and the statutorily required element that, to be perjurious, a false statement must be

tion or basis of a defendant's rights," *State v. Kenner*, 121 Idaho 594, 597, 826 P.2d 1306, 1309 (1992), and "error which 'so profoundly distorts the trial that it produces manifest injustice and deprives the accused of his constitutional right to due process,'" *State v. Sheahan*, 139 Idaho 267, 281, 77 P.3d 956, 970 (2003) (quoting *State v. Mauro*, 121 Idaho 178, 180, 824 P.2d 109, 111 (1991)). *Christiansen*, 144 Idaho at 470, 163 P.3d at 1182.

**2.** In *State v. Anderson*, Docket No. 32330 & 32331, 2006 WL 2974049 (Ct.App. October 19, 2006), an opinion that has not been published

because the Idaho Supreme Court has granted review, we held that the 2004 amendment to Rule 30(b) precludes appellate review, even for fundamental error, of claimed flaws in jury instructions to which no objection was made in the trial court. Because our Supreme Court has granted review in *Anderson*, our opinion in that case does not have precedential value. Rather than delay disposition of Wolfrum's appeal until the Supreme Court has issued its opinion in *Anderson*, we will assume the reviewability of Wolfrum's claims of error in the jury instructions.

made wilfully. No inconsistency, variance or constructive amendment has occurred.

## B. Instructions on Materiality

■ Wolfrum next asserts that because of conflicting terms, two jury instructions defining materiality were apt to confuse or mislead the jury. He asserts error in the emphasized portions of the following instructions. Instruction No. 20, which was drawn from language in the *McBride* opinion, stated:

> The test for materiality is whether the testimony *probably would or could* influence a tribunal or jury on the issue before it. The false statement relied upon need not bear directly upon the ultimate issue of fact.

> A statement is *material if it is material* to any proper point of inquiry, and if it is calculated and intended to bolster the witness' testimony on some material point or to support or attack his credibility. The degree of materiality is not important.

Instruction No. 22, which quoted I.C. § 18–5406, stated:

> It is no defense to a prosecution for perjury that the accused did not know the materiality of the false statement made by him; or that it did not, in fact, affect the proceeding in or for which it was made. It is sufficient that *it was material, and might have been used to affect such proceeding.*

Wolfrum's complaint about these two instructions is not entirely clear, but he seems to argue that the terms "probably would or could" in Instruction No. 20 were inconsistent with the term "might" in Instruction No. 22.

We are unconvinced that these instructions were confusing or prejudicial. We see no substantive difference between the terms "might" and "could," and Wolfrum does not dispute that "might" or "could" correctly expresses the applicable standard. While Wolfrum is correct in contending that "probably would" is a different standard than "might" or "could," it is not a difference that could have operated to his prejudice because "probably would" is a standard more difficult for the prosecution to prove.

Wolfrum's argument that the second paragraph of Instruction No. 20 is confusing because it says that a statement "is material if it is material" ignores the context and is disingenuous. When read together, the two paragraphs of Instruction No. 20 clearly make the point that the test for materiality as an element of the crime of perjury does not require that the false statement bear directly upon the ultimate issue of fact, but may be satisfied if the statement is relevant to any proper point of inquiry in the case, including witnesses' credibility.

In summary, the instructions defining materiality presented correct statements of the law, save for one term, "probably would" that was to Wolfrum's favor. Therefore, Wolfrum's challenges to Instructions 20 and 22 are without merit.

## C. Prosecutorial Misconduct

■ Lastly, Wolfrum contends that the prosecutor committed misconduct during closing argument by stating:

> If that's not perjury, what is? If this man is not convicted of perjury, who can be? If the charge of perjury was not designed for this kind of case, give me the case that it is. The very integrity of our system hinges on people walking into this courtroom and telling the truth, the whole truth, and nothing but the truth.

Wolfrum did not object to the prosecutor's argument, but on appeal contends that these comments were designed to inflame the passions or prejudices of the jury and therefore can be reviewed as fundamental error.

■ As noted above, when a defendant fails to preserve an issue for appeal by a timely objection in the trial court, reversal of a conviction will result only if fundamental error has occurred. *State v. Sheahan,* 139 Idaho 267, 280, 77 P.3d 956, 969 (2003). Prosecutorial misconduct rises to the level of fundamental error if it is calculated to inflame the minds of jurors and arouse passion or prejudice against the defendant, or is so inflammatory that the jurors may be influenced to determine guilt on factors outside the evidence. *Id.* Misconduct during closing argument will constitute fundamental error only if the comments were so egregious or inflammatory that any consequent prejudice

could not have been remedied by a ruling from the trial court informing the jury that the comments should be disregarded. *Id.; State v. Cortez,* 135 Idaho 561, 565, 21 P.3d 498, 502 (Ct.App.2001).

Closing argument is an opportunity for attorneys to crystallize the issues for the jury's consideration; to discuss from each party's respective standpoint how the jury should view the evidence and draw inferences therefrom; and to discuss how the law stated in the jury instructions applies to the evidence presented. It is a chance for the lawyers to persuade the jury of the strength of their respective cases based upon the evidence and the reasonable inferences that it will support. Toward that end, attorneys have substantial latitude in closing argument. *Sheahan,* 139 Idaho at 280, 77 P.3d at 969; *State v. Phillips,* 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct.App.2007).

Wolfrum's challenge to the argument here is without merit. Not only are the prosecutor's comments not fundamental error, they are non-objectionable. The prosecutor's statements were nothing more than a way of saying that the State had presented a strong case and that the crime of perjury is serious. Neither of these messages was inflammatory nor an appeal to jury passion or prejudice. The argument contains no assertion or implication that the jury should base its decision on anything other than the trial evidence. The prosecutor's statements were fair comment in accord with the considerable latitude afforded both sides at closing argument.

### III.

### CONCLUSION

The jury instructions did not constitute a variance from, or a constructive amendment to, the charging information, nor were the instructions defining materiality prejudicially confusing. The prosecutor did not commit misconduct at closing argument. Therefore, the judgment of conviction is affirmed.

Chief Judge PERRY and Judge GUTIERREZ concur.

