## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 33750

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, February 2008 |
| | ) | |
| v. | ) | 2008 Opinion No. 54 |
| | ) | |
| DEAN KEITH HICKMAN, | ) | Filed:  April 25, 2008 |
| | ) | |
| Defendant-Appellant. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bingham County.  Hon. James C. Herndon, District Judge.

Conviction and sentence for grand theft, <u>affirmed.</u>

Molly J. Huskey, State Appellate Public Defender, Boise, for appellant.  Diane Marie Walker, Deputy Public Defender argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent.  Kenneth K. Jorgensen, Deputy Attorney General argued.

_____

BURDICK, Justice

Dean Keith Hickman was convicted of grand theft and sentenced to ten years, one year fixed.  Hickman appeals.  We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On May 24, 2006, Appellant Dean Keith Hickman was gambling at Fort Hall Casino (the Casino).  After another patron, Edward Cain, reported his wallet was missing, the Casino reviewed its video surveillance.  The surveillance showed Hickman bending down to pick something up off of the floor near Cain, going to the restroom, and then walking out of the Casino.  Hickman returned to the Casino in different clothing about two hours later.  He was recognized, detained by security guards, and subsequently arrested for grand theft.

1

Hickman was convicted by a jury of grand theft. The district court imposed a ten year sentence on Hickman, with one year fixed. Hickman then brought this appeal.

## II. ANALYSIS

Hickman argues that the district court abused its discretion by imposing a ten year sentence, that his substantial rights were violated due to the variance existing between the charging document and the jury instructions, and that there was insufficient evidence to support a conviction of grand theft. We will address each issue in turn. First, however, we will discuss the existence of a clerical error as it relates to Hickman's conviction.

### A. Clerical Error

The Amended Information and jury instructions support a conviction of grand theft pursuant to I.C. § 18-2407(1)(b)(3), theft of financial transaction cards. However, the Judgment on Verdict and the Judgment/Order of Commitment state Hickman is convicted of grand theft pursuant to I.C. § 18-2407(1)(b)(1), theft of property having value exceeding one thousand dollars. The reference to I.C. § 18-2407(1)(b)(1) appears to be a clerical mistake which may be corrected by the district court. *See* I.C.R. 36. There is no indication from the record that either party brought this error to the attention of the district court. Nor does Hickman now argue the mistake mandates reversal. Therefore, we conclude the incorrect statutory reference in the Judgment on Verdict and in the Judgment/Order of Commitment is a clerical mistake. On this appeal, we review the case to determine whether a conviction pursuant to I.C. § 18-2407(1)(b)(3) is supported by the record.

### B. Jury Instructions

Hickman argues the district court's sentence was excessive, and as such, an abuse of discretion. Hickman asserts that because the jury was not properly instructed as to the felony charge the jury verdict only supported a conviction and consequently, a sentence, for a misdemeanor. The State asserts that although Hickman is characterizing his claim as a sentencing error, the claim is actually that the jury instructions were erroneous.

We agree Hickman's argument is a jury instruction issue and not a sentencing issue. The omission of an essential element in a jury instruction is reviewed for harmless error. *State v. Lovelace*, 140 Idaho 73, 79, 90 P.3d 298, 304 (2004); *State v. Nath*, 137 Idaho 712, 716-717, 52 P.3d 857, 861-62 (2002); *see also Neder v. United States*, 527 U.S. 1, 10-11 (1999). Hickman relies heavily on *State v. Nunez*, 133 Idaho 13, 19-21, 981 P.2d 738, 744-46 (1999), where this

2

Court remanded the case for resentencing as a misdemeanor when the jury instructions only supported a misdemeanor conviction and not a felony conviction. However *Nath* was decided after *Nunez*; in *Nath* the omission of a material element from the jury instructions was reviewed for harmless error and the remedy was to vacate the conviction and remand for a new trial. To determine whether the omission of an essential element from the jury instructions is harmless, this Court must determine "whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element." *Lovelace*, 140 Idaho at 79, 90 P.3d at 304; *see also Neder*, 527 U.S. at 19.

However, before we can reach the question of whether the omission was harmless, we must first determine whether we can review the omission at all.

1. Fundamental error

Idaho Criminal Rules 30(b) states that "[n]o party may assign as error the giving of or failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict . . . ." Hickman did not object to the jury instructions at the time of trial. Nonetheless, this Court will review fundamental errors in jury instructions even in the absence of an objection below. *State v. Anderson*, 144 Idaho 743, __, 170 P.3d 886, 892 (2007). To determine whether there was fundamental error, the Court must first determine whether there was any error, and, if so, then whether the error is fundamental. *Id*. at __, 170 P.3d at 891.

Jury instructions must correctly inform the jury as to the elements of the crime charged. *Anderson*, 144 Idaho at __, 170 P.3d at 892 (quoting *Middleton v. McNeil*, 541 U.S. 433, 437 (2004)). "When reviewing jury instructions, this Court must determine whether 'the instructions, as a whole, fairly and adequately present the issues and state the law.'" *State v. Sheahan*, 139 Idaho 267, 281, 77 P.3d 956, 970 (2003) (quoting *Silver Creek Computers, Inc. v. Petra, Inc.*, 136 Idaho 879, 882, 42 P.3d 672, 675 (2002)). An erroneous instruction is reversible error when the instructions, taken as a whole, "misled the jury or prejudiced a party." *Id*.

We agree with Hickman that Instruction No. 14 does not contain the elements necessary to prove grand theft. Theft occurs when "with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof." I.C. § 18-2403(1). Theft is divided into two degrees: grand theft and petit theft. I.C. § 18-2407. The statutory scheme lists specific actions or

circumstances that constitute grand theft; all other theft is petit theft. *Id*. It is grand theft if the property taken consists of a financial transaction card. I.C. § 18-2407(1)(b)(3).

Jury Instruction No. 14 encompasses the elements of petit theft, but does not include any element which would constitute grand theft.[1] Nonetheless, the State argues there is no error because the jury was instructed that the prosecution must "prove every material allegation contained in the Amended Information beyond a reasonable doubt . . . ." The Amended Information was included in the jury instructions and alleges Hickman "wrongfully, took, obtained, or withheld a financial transaction card . . . ."

Even though the information accuses Hickman of taking a financial transaction card, we conclude that as a whole, the jury instructions misled the jury. The Verdict form asks the jury to answer whether Hickman is "guilty or not guilty of Grand Theft." Instruction No. 14 sets forth what the State must prove in order to show Hickman is guilty of grand theft, and it erroneously omits an essential element. It further states if "each of the above has been proven beyond a reasonable doubt, you *must* find the defendant guilty of Theft." (Emphasis added). In this case, the jury instructions were unclear on whether it was necessary the State prove the property taken was a financial transaction card, and therefore, the jury instructions were erroneous.

Error is fundamental error if it "so profoundly distorts the trial that it produces manifest injustice and deprives the accused of his fundamental right to due process." *Anderson*, 144 Idaho at __, 170 P.3d at 891 (quoting *State v. Lavy*, 121 Idaho 842, 844, 828 P.2d 871, 873 (1992) (internal quotations omitted)). Here, the omission of a material element in the jury

---

[1] Jury Instruction No. 14 provided:

> In order for the defendant to be guilty of Grand Theft, the state must prove each of the following:
>
> 1. On or about May 24, 2006
>
> 2. in the state of Idaho
>
> 3. the defendant, Dean Keith Hickman, wrongfully took, obtained, or withheld property
>
> 4. from an owner, and
>
> 5. the defendant took, obtained, or withheld the property with the intent to deprive an owner of the property or to appropriate the property.
>
> If any of the above has not been proven beyond a reasonable doubt, then you must find the defendant not guilty of Theft. If each of the above has been proven beyond a reasonable doubt, you must find the defendant guilty of Theft.

Property was defined as "anything of value."

instructions constitutes fundamental error. As we noted in *Anderson*, a jury instruction violates due process if it fails to give effect to the requirement that the State prove every element of the offense. *Id.* at __, 170 P.3d at 892. In this case, the State was not required to prove Hickman took a financial transaction card, which was a necessary element to support the grand theft conviction, and consequently, Hickman was denied due process. Therefore, although there was no objection made below, the error was fundamental and we will review it on appeal.

2. Harmless error

We will only reverse a conviction for fundamental error, if that error was not harmless. The omission of an essential element from a jury instruction is not harmless when "the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element." *Lovelace*, 140 Idaho at 79, 90 P.3d at 304; *see also Neder*, 527 U.S. at 19.

Here, the omitted element was that the property taken was a financial transaction card. The jury concluded Hickman took or withheld property. Hickman was only accused of taking Cain's wallet and its contents. The evidence that the wallet contained financial transaction cards was uncontroverted. There is absolutely no evidence in the record that could rationally lead to a finding that the wallet did not contain financial transaction cards. Thus, we hold the omission of the element that the property taken be financial transaction cards is harmless error.

## C. Variance Between Charging Document and Jury Instructions

Hickman also asserts there was an impermissible variance between the Amended Information and the jury instructions because the jury instructions allowed the State to prove grand theft by proving that Hickman "took, obtained, or withheld any property, regardless of the value of the property or if the property was a financial transaction card." Consequently, Hickman contends, his substantial rights were affected because the jury was not required beyond a reasonable doubt to find Hickman took, obtained, or withheld property that is a financial transaction card.

Whether there is an impermissible variance between the charging document and jury instructions is a question of law over which this Court exercises free review. *State v. Sherrod*, 131 Idaho 56, 57, 951 P.2d 1283, 1284 (Ct. App. 1998). A variance between the charging document and jury instructions is fatal when "the record suggests the possibility that the defendant was misled or embarrassed in the preparation or presentation of his defense." *State v.*

*Windsor*, 110 Idaho 410, 418, 716 P.2d 1182, 1190 (1985) (citing *Berger v. United States*, 295 U.S. 78, 82-84 (1935)).

In this case, assuming for the purposes of argument that there was a variance, Hickman has not shown he was misled or embarrassed in the preparation of his defense. The Amended Information accused him of taking a wallet containing financial transaction cards and the State presented evidence showing Hickman took the wallet and its contents. Hickman was not embarrassed in his defense which was that he did pick up a wallet, but it was his own and not Cain's. Thus, we hold there was no impermissible variance between the Amended Information and the jury instructions.

## D. Substantial and Competent Evidence

Hickman contends there was insufficient evidence to convict him of grand theft beyond a reasonable doubt. Thus, he asks this Court to reverse the district court's denial of his motions for directed verdict and to vacate the conviction because the jury verdict is unsupported by the evidence.

This Court has observed that:

> A directed verdict for defendant, however, or judgment for acquittal as it is now called, is an important safeguard to the defendant. It tests the sufficiency of the evidence against him, and avoids the risk that a jury may capriciously find him guilty though there is no legally sufficient evidence of his guilt.

*State v. Holder*, 100 Idaho 129, 130, 594 P.2d 639, 640 (1979), *overruled on other grounds by State v. Humpherys*, 134 Idaho 657, 8 P.3d 652 (2000).

Idaho Criminal Rules 29 provides:

(a) **Motion before submission to jury.** The court on motion of the defendant or on its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, information or complaint after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

On review, this Court must determine whether "the evidence is sufficient to sustain a conviction of the crime charged." *State v. Hansen*, 125 Idaho 927, 930, 877 P.2d 898, 901 (1994). This Court examines the evidence to determine whether a reasonable mind could conclude beyond a reasonable doubt that the defendant's guilt as to each material element of the offense was proven. *State v. DeGrat*, 128 Idaho 352, 355, 913 P.2d 568, 571 (1996).

Theft requires that "with intent to deprive another of property or to appropriate the same to himself or to a third person, [the defendant] wrongfully takes, obtains or withholds such

6

property from an owner thereof." I.C. § 18-2403(1). The theft is grand theft if the property is a "financial transaction card." I.C. § 18-2407(1)(b)(3).

Hickman argues there is insufficient evidence to support a conviction of grand theft because there was insufficient evidence connecting Hickman to the wallet and because there was insufficient evidence the wallet contained financial transaction cards.

<u>1. Theft of the wallet</u>

Hickman argues the evidence shows nothing more than that he bent over and picked up something near Cain, and he emphasizes that there was no other information showing any other connection between Hickman and Cain or between Hickman and Cain's wallet. The State argues the evidence is sufficient because it showed Hickman picking something up from under Cain at the relevant time, and Hickman admitted to picking up a wallet. Furthermore, the State contends simply because the evidence is circumstantial does not mean it is insufficient. We hold that the evidence presented by the State is sufficient for a reasonable mind to conclude beyond a reasonable doubt that Hickman committed theft of Cain's wallet.

There was a video from the Casino's surveillance department showing Hickman bend down near Cain and pick something up, walk to the bathroom, and exit the casino. Cain testified that in his wallet he had between six to nine hundred dollars in denominations of hundreds, twenties, fives, and ones when he started playing the machine. David Johnson of the Bingham County Sheriff's Office testified that Hickman's wallet contained hundred dollar bills, twenty dollar bills, five dollar bills, and one dollar bills. Ethan Tendore, the Casino's security supervisor, testified as to the following conversation between himself and Hickman:

Q:     Mr. Tendore, you took him – did you ask him any questions after you got him away from his machine other than would he come with you?

A:     Yeah. I asked him if he'd been in the casino earlier. He said, "Yes."

I might have – but I'm not sure. I showed him a picture and asked him if it was him. And he said, "Yeah, that was me. I was in here earlier." But he was wearing different clothes.

And then I asked him if he'd found anything on the – in the casino, if he picked anything off the floor. And he said, "Yeah. I dropped my wallet, and I picked it up." And then –

. . .

Q:     Okay. Prior to him making the comment about the wallet, had anybody said anything about a wallet being on the floor?

7

A:      No.

Though this evidence does require the jury to make inferences, it is sufficient evidence for a reasonable mind to conclude beyond a reasonable doubt that Hickman took Cain's wallet.

2. Financial transaction cards

A person is guilty of grand theft when the property consists of a "financial transaction card or financial transaction card account number as those terms are defined in section 18-3122, Idaho Code . . . ." I.C. § 18-2407(1)(b)(3). A financial transaction card is a credit card or debit card "issued by the issuer for the use of the card holder in obtaining money, goods, services, or anything else of value on credit . . . ." I.C. § 18-3122(6). A card holder is "any person or organization named on the face of a financial transaction card to whom, or for whose benefit, a financial transaction card is issued by an issuer." I.C. § 18-3122(3). An issuer is "a business organization or financial institution or its duly authorized agent which issues a financial transaction card." I.C. § 18-3122(8).

Hickman points out there are distinct definitions for an "expired financial transaction card," a "revoked financial transaction card," and simply a "financial transaction card," I.C. § 18-3122(5), (6), and (11); consequently, when the legislature made theft of a "financial transaction card" a felony without reference to the other two defined terms, the legislature intended the felony only include valid financial transaction cards.

Statutory construction is a question of law over which this Court exercises free review. *State v. Yager*, 139 Idaho 680, 689, 85 P.3d 656, 665 (2004). This Court "interprets statutes according to the plain, express meaning of the provision in question, and will resort to judicial construction only if the provision is ambiguous, incomplete, absurd, or arguably in conflict with other laws." *Id*. A construction that leads to an absurd or unreasonably harsh result is disfavored. *Id*. at 690, 85 P.3d at 666. The goal "is to give effect to the purpose of the statute and the legislative intent in enacting it, which may be implied from the language used or inferred on grounds of policy or reasonableness." *The Senator, Inc., v. Ada County, Bd. of Equalization*, 138 Idaho 566, 570, 67 P.3d 45, 49 (2003).

In the grand theft statute the legislature chose to use the defined term "financial transaction card" instead of "expired financial transaction card" or "revoked financial transaction card." *See* I.C. § 18-2407(1)(b)(3). An "expired financial transaction card" and a "revoked financial transaction card" are distinct from a "financial transaction card" in that they are no

8

longer valid. I.C. § 18-3122(5), (6), and (11). Thus, it is reasonable to infer from the language used in the statutes and on grounds of reasonableness that a "financial transaction card" is a valid card and that the legislature intended grand theft of a "financial transaction card" involve only valid cards and not revoked or expired financial transaction cards. Therefore, the financial transaction card must have been valid at the time it was taken. *See* I.C. § 18-2403(1); I.C. § 18-2407(1)(b)(3).

The only evidence as to the financial transaction cards came from Cain's testimony:

Q: Okay. Did you have any other items in your wallet?

A: Yes, I did. I had a credit card. It had a – I had $15,000 on it.

Q: Do, do you remember what –

A: Visa.

Q: Okay.

A: I had three concealed weapons for different states. I had my badge that I use in my job and, and miscellaneous other things.

Q: Okay. Other than the Visa card, did you have any other type of like a credit card or debit card?

A: I had – well, actually I have another debit card, a Visa debit card, in there for one of my other accounts. That had a 30,000-dollar limit.

Q: Okay. Any identification in your wallet indentifying it as you?

A: Yes, a driver's license.

Additionally, on cross-examination, Cain testified that no one tried to use his credit card or debit card and that immediately after noticing the missing wallet he used his cellular phone to cancel his cards.

Hickman argues the State's evidence was insufficient to show that Cain's credit card and debit card were valid, that Cain was the "card holder" on the card, that the cards were issued by an "issuer," or that the cards were for the use of the card holder in obtaining money, goods, or services. The State contends though the evidence requires inferences be made, it is sufficient to support the jury verdict—that credit cards and debit cards are used by the card holder to obtain money, goods, or services is common knowledge, and Cain's testimony that the cards were in his wallet and that when he discovered his wallet was missing he called to cancel his cards leads to a

9

reasonable conclusion that he was the card holder, the cards were issued by an issuer, and that the cards were valid at the time they were taken.[2]

We conclude this evidence is such that a reasonable mind could conclude Hickman's guilt as to obtaining, taking, or withholding a "financial transaction card" as defined by statute was proven beyond a reasonable doubt. Therefore, we affirm the jury verdict and the denial of Hickman's motion for a directed verdict.

### III. CONCLUSION

We hold that the erroneous jury instructions resulted in harmless error, that there was no impermissible variance between the charging document and the jury instructions, and that the evidence is sufficient to sustain the grand theft conviction. We affirm Hickman's conviction and sentence.

Chief Justice EISMANN and Justices W. JONES and HORTON, **CONCUR.**

J. JONES, concurring in part and dissenting in part.

I concur with the Court's opinion except for Part II.B.2, which concludes that the defect in Jury Instruction No. 14 was harmless, and Part II.D.2, which holds that the evidence was sufficient to support a conviction for theft of a financial transaction card. I would vacate the conviction on the ground there was not sufficient evidence to establish beyond a reasonable doubt that Hickman was guilty of theft of a financial transaction card. I.C. § 18-2407(1)(b)(3).

For a relatively short trial, this case seems to have accumulated more than its share of defects. Each of the participants below contributed their part. While I agree with the Court that some of the defects can be overlooked, I can't conclude that the record supports Hickman's conviction. The Judgment shows that Hickman was convicted of subsection (1) of I.C. § 18-2407(1)(b), rather than subsection (3), and I would concur in treating this as a clerical error, provided that the record would support a conviction for violation of subsection (3). I concur that the defect in Jury Instruction No. 14 – failing to say that the property taken was a financial transaction card – constituted fundamental error and would be inclined to agree that the error was harmless, had the evidence established beyond a reasonable doubt that valid financial transaction cards were contained in Cain's wallet. The variance between the Amended Information and the

---

[2] In this case the evidence is sufficient to show Cain is the actual card holder. However, we note that it is not necessary Cain be the actual card holder; the evidence would be sufficient if it showed Cain had a right to possession of the financial transaction cards superior to that of Hickman. *See* I.C. § 18-2402(6).

jury instructions did not rise to the level of reversible error. And, while the evidence that Hickman took Cain's wallet is rather thin – the less-than-perfect video did not show what the item was that Hickman picked up from the floor but Hickman did tell the casino's security supervisor it was a wallet (his wallet) – there may have been just enough to allow the jury to conclude that it was Cain's wallet.

The troublesome part is the scanty evidence in the record that the wallet contained valid financial transaction cards. I have a hard time concluding that the evidence established this element beyond a reasonable doubt. As the Court notes, the only evidence as to the financial transaction cards came in the form of Cain's few lines of testimony on the matter. With regard to items he had in his wallet, other than cash, Cain testified that he had a credit card. He stated, "<u>I</u> had $15,000 on it." (emphasis added). Since there was no further testimony regarding the credit card, we don't know whether it had been activated and, if so, whether it had a $15,000 limit, whether $15,000 worth of charges were on it (which may be the better interpretation since <u>he</u> had $15,000 on it), whether the card was in good standing, whether the card, if valid, was maxed out, or whatever. The Court is correct in concluding that a financial transaction card must be valid in order to fit within the purview of I.C. § 18-2407(1)(b)(3) but we are left with less than compelling evidence regarding the validity of this card.

With respect to the debit card, there was no testimony clearly placing it in the wallet. The prosecutor inquired, "Other than the Visa card, did you have any other type of like a credit card or debit card?" The question did not end with the phrase "in your wallet." The answer was, "I had – well, actually I <u>have</u> another debit card, a Visa debit card, in there for one of my other accounts." (emphasis added). Had Mr. Cain not changed "I had" to "I have" another card, it might have been reasonable to infer that the debit card was in the wallet at the time he lost it. It is interesting that the "had" was changed to "have", which might indicate that he still had it at the time of trial and it wasn't in the wallet at the time the wallet went missing. Mr. Cain did not explain where "in there" was. Again, there was no inquiry regarding the present validity of the card or anything else about it. If we are going to impose a ten-year sentence (one year fixed) on an individual for depriving another of financial transaction cards, it seems the proof should go somewhat deeper.

I.C. § 18-3122(6) defines a financial transaction card as:

[A]ny instrument or device known as a credit card, credit plate, bank services card, banking card, check guarantee card, debit card, telephone credit card or by any other name issued by the issuer for the use of the card holder in obtaining money, goods, services, or anything else of value on credit, or in certifying or guaranteeing to a person or business the availability to the card holder of the funds on deposit that are equal to or greater than the amount necessary to honor a draft or check payable to the order of such a person or business; or any instrument or device used in providing the card holder access to a demand deposit account or a time deposit account for the purpose of making deposits of money or checks therein, or withdrawing funds in the form of money, money orders, or traveler's checks or other representative of value therefrom or transferring funds from any demand account or time deposit account to any credit card account in full or partial satisfaction of any outstanding balance existing therein.

While it is not necessary for the prosecution to show every particular detail outlined in the definition, it would be handy to at least know the names of the card holder and issuer, whether the card had been activated, and the fact that credit or funds are available to the card holder at the time of its loss (i.e. that the card is not expired, revoked or maxed out). Unfortunately, that information is not in the record with regard to the cards at issue here.

On cross examination, Cain stated that he called and canceled his Visa cards when he found they were missing. This might tend to show that they were valid, although it does not place the debit card in his wallet. On the other hand, it might also show that he was acting prudently, regardless of the validity of the cards. With the present day concern regarding identity theft, it would make sense for a person to call in to report the loss of a financial transaction card even if it is expired or revoked. After all, either can be used to commit criminal offenses (I.C. §§ 18-3124 and 18-3125) or to endanger a person's credit.

With the skimpy evidence about the financial transaction cards, compounded by the omission from Jury Instruction No. 14 that the property taken consisted of financial transaction cards, I would vacate the conviction.