IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 39637

| STATE OF IDAHO, | ) | 2013 Opinion No. 33 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: June 4, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| VERONICA LYNN CALVER aka HANEY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael R. McLaughlin, District Judge.

Judgment of conviction for felony child custody interference, affirmed.

Sara B. Thomas, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant. Jason C. Pintler argued.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent. Mark W. Olson argued.

_____

GUTIERREZ, Chief Judge

Veronica Lynn Calver aka Haney appeals from her judgment of conviction for felony child custody interference. Specifically, Veronica asserts the State failed to prove with sufficient evidence that she was "without lawful authority" to remove her son from the State of Idaho pursuant to a joint temporary restraining order (JTRO). The JTRO was entered by the family court after the son's father filed for divorce. Veronica requests a judgment of acquittal on this basis. Alternatively, she argues the district court erroneously instructed the jury by failing to require a specific finding that the father had a custodial or parental right to have the son within the State of Idaho. She also challenges a jury instruction on the ground it contained a fatal variance because the instruction defined the nature of the father's custodial rights in a way that was not included in the charging document. Veronica asserts that each error in instructing the jury was not harmless and asks for a new trial.

1

# I.

## FACTS AND PROCEDURE

Raymond Calver and Veronica wed in 2005 and had a son together in 2008. In 2009, the family moved to Idaho where Raymond and Veronica experienced marital discord due to Raymond's alleged substance abuse issues and violent behavior. The problems eventually led to a separation in the summer of 2011. Prior to the separation, the couple had discussed moving to Tennessee to be close to Veronica's mother. Raymond and Veronica had made preparations for the move; however, at some point before the planned departure date, Raymond decided he would not be going with the family to Tennessee. Veronica went forward with the plans to move. On August 29, 2011, Raymond filed for divorce in Idaho. Upon the filing of the divorce complaint, the magistrate issued a JTRO--an order designed to maintain the status quo of the parties in relation to any minor children subject to the divorce. The following day, Raymond's brother signed an affidavit claiming he served Veronica with the divorce filings, including the JTRO. Based upon advice she received, Veronica believed that the service upon her was not legally proper.

Within the first days of September, Veronica left Idaho for Tennessee with some belongings, her two minor children from a previous relationship, and the son whom she had with Raymond. She only made it to Utah, where her car broke down beyond repair. A Garden City Police officer attempted to contact Veronica a couple of days later. Veronica called the officer from Utah, who relayed to Veronica that pursuant to the JTRO, she was not to remove the son from the State of Idaho for more than seventy-two hours and she was required to return the son to Idaho. Within a couple of days, a detective from the Garden City Police Department contacted Veronica in Utah, telling her that he was planning to seek a felony arrest warrant if she did not immediately return the son to Idaho. The detective faxed a copy of the divorce papers, including the JTRO, to Veronica in Utah. Thereafter, Veronica's mother and step-father drove from Tennessee to Utah, picked up Veronica and her children, and took them all to Tennessee. Veronica spoke with a Tennessee attorney, who advised her that the JTRO was not valid. Ten days after arriving in Tennessee, police arrested Veronica on an Idaho warrant for felony custodial interference.

At her Idaho trial, Veronica raised the affirmative defense that her actions were necessary to protect either herself or her children from imminent physical harm. The district court

2

instructed the jury on both the charge and the defense of necessity without any objections from the parties. The jury found Veronica guilty of felony child custody interference, Idaho Code § 18-4506. The district court sentenced her to a unified term of five years, with one year determinate, but suspended the sentence and placed Veronica on probation for a period of five years. Veronica timely appeals. She asserts that the State had insufficient evidence to prove she was "without lawful authority" to remove the son from the State of Idaho and seeks an acquittal. In the alternative, Veronica argues that the jury instructions were erroneous and contained a fatal variance, either of which are not harmless error, and she asks for a new trial.

## II.

## ANALYSIS

### A.    Sufficiency of the Evidence

The standard of review for sufficiency of the evidence for a judgment of conviction entered upon a jury verdict is whether there was substantial evidence upon which a reasonable trier of fact could have found the prosecution sustained its burden of proving the essential elements of the crime beyond a reasonable doubt. *State v. Hoyle*, 140 Idaho 679, 684, 99 P.3d 1069, 1074 (2004); *State v. Lawyer*, 150 Idaho 170, 172, 244 P.3d 1256, 1258 (Ct. App. 2010). We do not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Lawyer*, 150 Idaho at 172, 244 P.3d at 1258; *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). Moreover, we consider the evidence in the light most favorable to the prosecution. *Lawyer*, 150 Idaho at 172, 244 P.3d at 1258; *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998). If we determine the evidence is insufficient, the defendant is entitled to acquittal. *See Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101.

To convict a person of felony child custody interference, the State must prove the person intentionally and "without lawful authority" takes or keeps or withholds a minor child from an individual having custody, joint custody, or other parental rights. I.C. § 18-4506(a). Veronica asserts there is insufficient evidence to show she was without lawful authority to interfere with Raymond's custodial rights because the only limitation on her right to parent was the JTRO. Veronica argues the State could not convict her absent proof both that she violated specific terms of the JTRO and that the JTRO granted Raymond the custodial rights Veronica was alleged to have interfered with. The State responds that it need only prove that Veronica violated the

3

JTRO, which limited her custodial rights, and that her actions deprived an individual, with some custodial rights, of the child. In other words, the State contends it must prove that the defendant acted outside the limits of her custody rights and that there was a qualified victim--i.e. the father--under the statute.

Neither party challenges the validity of the JTRO or the fact that it does not establish any custodial rights of either party. Although both parties concur that the State must show a violation of the JTRO to establish that Veronica removed the son from the State of Idaho "without lawful authority," we do not read the statute so narrowly. This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67. When this Court must engage in statutory construction because an ambiguity exists, it has the duty to ascertain the legislative intent and give effect to that intent. *State v. Beard*, 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct. App. 2001). To ascertain such intent, not only must the literal words of the statute be examined, but also the context of those words, the public policy behind the statute, and its legislative history. *Id.* It is incumbent upon a court to give an ambiguous statute an interpretation that will not render it a nullity. *Id*. Constructions of an ambiguous statute that would lead to an absurd result are disfavored. *State v. Doe*, 140 Idaho 271, 275, 92 P.3d 521, 525 (2004).

The phrase "without lawful authority" is not defined in the statute. The plain meaning is action taken without the right or permission to act legally on another's behalf, or the right or permission is exercised in a way contrary to or not permitted by law. *See* BLACK'S LAW DICTIONARY 142, 902 (8th ed. 1999) (defining "authority" and "lawful"). When arguing that there is insufficient proof she acted "without lawful authority," Veronica asserts she has a fundamental constitutional right as a parent to make decisions regarding the child and the only limitation on that right was the JTRO, which did not prohibit her from taking, keeping, or withholding the son from Raymond. Necessarily, then, we must look to the extent and scope of a

4

parent's rights and whether, as Veronica argues, the JTRO had to specifically limit those rights in terms analogous to the criminal child custody interference statute in order for the State to establish she was "without lawful authority" in taking the son to Tennessee.

Generally, a parent does have a fundamental constitutional interest in making decisions regarding parenting a child. *See Meyer v. Nebraska*, 262 U.S. 390, 399-400 (1923) (recognizing that establishing a home and upbringing children is a fundamental liberty interest); *see also Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) ("[T]he custody, care and nurture of the child reside first in the parents . . . ."). However, it is equally true that a State may put reasonable limits on a parent's rights, acting as *parens patriae*. *See Prince*, 321 U.S. at 166.[1] The rights of parents are not unlimited, and the government may infringe on those rights if the infringement is narrowly tailored to serve a compelling state interest. *Reno v. Flores*, 507 U.S. 292, 301-02 (1993). The Idaho child custody interference statute is just such a limitation as applied to a parent.[2] In order to protect both the child and other persons with custody rights from arbitrary exercise of parental authority, the child custody interference statute includes, as victims, other persons with any custodial or parenting rights "whether such rights arise from a temporary or permanent custody order, or from the equal custodial rights of each parent in the absence of a

---

[1] We additionally note *Troxel v. Granville*, 530 U.S. 57, 88 (2000) (J. Stevens dissenting) (citations omitted):

> A parent's rights with respect to her child have thus never been regarded as absolute, but rather are . . . tied to the presence or absence of some embodiment of family. These limitations have arisen . . . because of this Court's assumption that a parent's interests in a child must be balanced against the State's long-recognized interests as *parens patriae*, and, critically, the child's own complementary interest in preserving relationships that serve her welfare and protection.
> . . . .
> The constitutional protection against arbitrary state interference with parental rights should not be extended to prevent the States from protecting children against the arbitrary exercise of parental authority that is not in fact motivated by an interest in the welfare of the child.

*See also Hernandez v. Hernandez*, 151 Idaho 882, 886, 265 P.3d 495, 499 (2011) (citing J. Stevens' dissent in *Troxel*).

[2] Veronica does not raise the constitutionality of the statute as an issue on appeal. Therefore, we presume for purposes of this appeal that the statute is narrowly tailored to serve a compelling government interest.

custody order." I.C. § 18-4506(1)(a). As defined, "equal custodial rights" means both the mother and father are equally entitled to custody, services, and earnings of the child. I.C. § 32-1007.[3] The Idaho Supreme Court has indicated that absent a custody order allowing such an action, a parent who takes a child and compromises the equal custodial rights of the other parent commits a criminal act. *Hopper v. Hopper*, 144 Idaho 624, 627, 167 P.3d 761, 764 (2007). In *Hopper*, a father appealed from an order granting custody to the mother of their child. The Idaho Supreme Court concluded that the magistrate erred in granting the mother custody and allowing her to benefit from a criminal act of taking the child from the father, as it resulted in her having a greater relationship with the child and being able to gain all evidentiary benefits of that enhanced relationship when establishing what was in the best interests of the child. *Id.* The Court held the proceedings should not have been allowed to continue until the mother returned the child to the jurisdiction where the father could exercise his rights as an equal parent and the case could be decided on the underlying principle that the best interests of a child include having a continuing relationship with both parents. *Id.* The determination that the mother committed a criminal act was not germane to the actual holding of the case in *Hopper*, but we adopt the reasoning. In Idaho, it is presumed that a continuing relationship with both parents is in the child's best interests, and a parent who intentionally absconds with the child from the jurisdiction and prejudices the other parent's ability to maintain that relationship with the child will be in violation of the custodial interference statute. *See id.*

Under the wording of the statute, a violation of a court order establishing custody or other parental rights would need to be proven in order to sustain a conviction regarding certain victims. However, when the victim is a parent to the child, when there is no custody agreement or decree that alters the equal custody enjoyed as a function of that relationship, and when the victim parent has not consented to the defendant's act, the State is not required to prove a violation of a court order. In other words, even absent the JTRO in this case, Veronica could still be charged and convicted of child custody interference if there is sufficient evidence that she intentionally, and without the benefit of a custody order in her favor, took, kept, or withheld the son from his father, Raymond. As the State correctly pointed out to the jury at trial, the only facts the State

---

[3]     Within Idaho Code § 32-1007, it is outlined what conditions may cause a loss of such equal custodial rights, including abandonment or refusal to take custody. None of those conditions exist in this case.

needed to prove as to Raymond was that he was a parent with custodial rights to the son and that he did not consent to Veronica taking the son to Tennessee.

Nonetheless, the State relied on submitting evidence of the JTRO and Veronica's violation of the order to establish that Veronica acted without lawful authority. There is substantial and competent evidence from which the jury could conclude Veronica intentionally violated the JTRO. The State introduced the JTRO into evidence. There is no question that the JTRO was a lawful restriction on the parental rights of both Raymond and Veronica and consistent with their due process rights, whether or not it altered the equal custodial rights of each parent. *See* Idaho Rule of Civil Procedure 65(g); *Overman v. Overman*, 102 Idaho 235, 239, 629 P.2d 127, 131 (1980); *see also Allbright v. Allbright*, 147 Idaho 752, 755, 215 P.3d 472, 475 (2009) (citing *Overman*). The order is clearly dated prior to the time Veronica departed from Idaho. By the wording in the order, Veronica was specifically prohibited from "[r]emoving any minor child of the parties who reside in Idaho from the State of Idaho (except for periods of time not exceeding 72 hours)" unless she had the written consent of Raymond to do so. Moreover, the order is binding on any party who received actual notice of the order "by personal service or otherwise." Though Veronica argues the service of the divorce papers--including the JTRO--was legally insufficient, there is substantial evidence she had actual notice of the contents of the order prior to her intentional violation of it. Both an officer and a detective testified that each spoke with Veronica while she was broken down in Utah and staying at a local shelter. When the officer spoke with her, Veronica acknowledged that she was aware the papers served upon her (whether or not she accepted them) pertained to Raymond's attempt to keep the son in the jurisdiction. Though Veronica disputed proper service, the officer provided her actual notice of the contents of the order; in fact, he specifically read the provision of the order that prohibited her from taking the son out of the state. Veronica told the officer that she felt she had a "loophole" because she believed she had not been legally served. Nonetheless, the officer additionally informed her that he had documents stating she had been served the order, he was attempting to keep her from going to jail, and if she failed to return to the State of Idaho (as she was not yet in violation of the order), she could face felony charges.

The detective who also spoke with Veronica informed her again of the contents of the JTRO and explained to her that regardless of whether she felt she had been properly served the papers, including the order, she had actual notice that she would be violating the order if she

7

failed to return the son to Idaho. The detective explained that as long as she was making a good faith effort to get back to Idaho with the son, he would not seek an arrest warrant. He then faxed a copy of the order to her while she was still in Utah. However, after those conversations with both the officer and the detective, Veronica proceeded to Tennessee with the son. She chose to rely on the opinion of others that she had a loophole in being subject to the order because of improper service, and she continually asserted that she did not know of the restrictions placed upon her by the order. She chose not to read the paperwork and chose to deny that she ever received notice.

As an additional argument, Veronica asserts that even if she removed the son from Idaho in violation of the JTRO, that violation cannot be used to support a conviction because the JTRO did not specifically prohibit her from taking, keeping, or withholding the son from Raymond. Rather, the JTRO only established that the son was to be kept in Idaho, not that the son be given to or shared with Raymond. She points out that the JTRO did not mirror wording in the criminal statute and only provided notice of possible civil penalties, including a fine and up to five days in jail.

We reject that distinction. We reiterate that under the circumstances of this case, the State was not required to show a violation of the *civil* JTRO to establish that Veronica violated the *criminal* statute. The two are not co-equal. Even relying on a violation of the JTRO to show she acted without lawful authority, the State was not required to show she had notice of possible criminal penalties within the JTRO itself as a condition to finding her criminally liable because a citizen is presumptively charged with knowledge of criminal statutes once enacted. *See Wilson v. State*, 133 Idaho 874, 880, 993 P.2d 1205, 1211 (Ct. App. 2000). Moreover, whether Veronica took, kept, or withheld the child from Raymond is a separate element from whether she acted without lawful authority. The violation of the JTRO was used to simply show that she acted without lawful authority. As to the separate element of the act itself, the JTRO did not need to specifically prohibit Veronica from taking, keeping, or withholding the minor child in order for the State to sustain its burden of proof. The JTRO required Veronica to keep the son in the State of Idaho and substantial and competent evidence showed a violation. In acting outside the bounds of restrictions within the JTRO, there is substantial and competent evidence showing Veronica took, kept, or withheld the son from Raymond.

**B.    Jury Instructions**

Veronica asserts two errors regarding the jury instructions: she claims the jury was erroneously instructed and claims one of the instructions contained a fatal variance. Veronica did not object to the jury instructions before the trial court, and therefore, she must show the alleged errors are fundamental. *See State v. Hansen*, 148 Idaho 442, 444, 224 P.3d 509, 511 (Ct. App. 2009) (stating a claim of erroneous jury instruction, where no objection was made at trial, is only reviewable for fundamental error); *State v. Wolfrum*, 145 Idaho 44, 46-47, 175 P.3d 206, 208-09 (Ct. App. 2007) (reviewing an allegation of a fatal variance, made for the first time on appeal, under fundamental error). In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court abandoned the definitions it had previously utilized to describe what may constitute fundamental error. The *Perry* Court held that an appellate court should reverse an unobjected-to error when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978.

**1.    Whether the instructions were erroneous**

Jury instructions must correctly inform the jury as to the elements of the crime charged. *State v. Hickman*, 146 Idaho 178, 181, 191 P.3d 1098, 1101 (2008). The question of whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct. App. 1993). Jury instructions that fail to require the State to prove every element of the offense violate due process and, therefore, rise to the level of fundamental error. *Hickman*, 146 Idaho at 182, 191 P.3d at 1102; *Hansen*, 148 Idaho at 444, 224 P.3d at 511.

Veronica argues the jury instruction on the charge was erroneous because it indicated that she could be found guilty if she "kept and/or withheld" the son from Raymond, as an alternative to finding she "took" the son from Raymond. She asserts that the jury instruction should have required the jury to find that Veronica violated the specific terms of the JTRO, prohibiting her to take (remove) the son from the State of Idaho, not simply that she engaged in any other conduct not specifically prohibited by the order.

9

In this case, the district court instructed the jury on the charge as follows:

> In order for the defendant, Veronica L. Calver, to be guilty of Child Custody Interference, the state must prove each of the following:
> 1. On or between September 8, 2011 and October 10, 2011
> 2. the defendant, Veronica L. Calver, intentionally
> 3. and without lawful authority
> 4. took and/or kept and/or withheld
> 5. a child under the age of 18 years,
> 6. from Raymond Calver who had the right to custody and/or other parental rights arising from a temporary restraining order regarding the child in CV-DR-2011-16503,
> 7. where the defendant, with knowledge of the order, took the child out of state and/or did not voluntarily return the child unharmed.
>
> If any of the above has not been proven beyond a reasonable doubt, you must find the defendant not guilty. If each of the above has been proven beyond a reasonable doubt, then you must find the defendant guilty.
>
> The "right to custody" includes custody, joint custody, visitation, or other parental rights, whether such rights arise from a temporary or permanent custody order or from the equal custodial rights of each parent in the absence of a custody order.
>
> It is not "without lawful authority" to take and/or keep and/or withhold a child if such action is taken to protect the child from imminent physical harm and/or such an action is taken by a parent fleeing from imminent physical harm to such parent.

The instruction is nearly identical to the pattern jury instructions. Idaho Criminal Jury Instruction 1240.

Veronica cannot show fundamental error in the jury instruction. First, the instruction did not omit any essential element of the offense, and the pattern Idaho Criminal Jury Instruction is presumptively correct. *State v. Halbesleben*, 139 Idaho 165, 170 n.1, 75 P.3d 219, 224 n.1 (Ct. App. 2003). Moreover, we do not find this to be a case where the pattern jury instruction standing alone is inadequate to convey the necessary state of mind of the defendant or to define that act taken by the defendant. *Cf. Id.* (noting a specific pattern jury instruction that, standing alone, is insufficient to convey the elements the State must prove). Second, Veronica's assertion that the jury was improperly instructed on the element of whether she "took and/or kept and/or withheld" the son from Raymond rests on her contention that the JTRO had to specifically prohibit this conduct. We rejected that claim above. Instead, violation of the JTRO, as it was used by the State in this case, went only to the element of whether she acted without lawful authority. There was substantial and competent evidence that she violated the JTRO and, in doing so, acted without lawful authority under the State's theory of the case. As to the separate

element of whether Veronica took, kept or withheld the son, the court was not required to instruct the jury that whether such an act was contrary to the statute depended on wording in the JTRO.

### 2. Whether the instructions contained a fatal variance

The existence of an impermissible variance between a charging instrument and the jury instructions is a question of law over which we exercise free review. *State v. Sherrod*, 131 Idaho 56, 57, 951 P.2d 1283, 1284 (Ct. App. 1998). Our task in resolving the issue presented is two-fold. First, we must determine whether there is a variance between the charging instrument and the instructions presented to the jury. *See State v. Brazil*, 136 Idaho 327, 329, 33 P.3d 218, 220 (Ct. App. 2001). Second, if a variance exists, we must examine whether it rises to the level of prejudicial error requiring reversal of the conviction. *Id.* A variance between a charging instrument and a jury instruction necessitates reversal only when it deprives the defendant of the right to fair notice or leaves him or her open to the risk of double jeopardy. *State v. Windsor*, 110 Idaho 410, 417-18, 716 P.2d 1182, 1189-90 (1985); *Brazil*, 136 Idaho at 330, 33 P.3d at 221.

Veronica asserts there was a fatal variance between the information and the jury instructions because the jury, as instructed, could find Veronica guilty if it found that Raymond enjoyed custodial or other parental rights stemming either from the JTRO or from his natural rights as a father. She argues that, as alleged in the information, the State was required to prove she violated the specific custodial or parental rights contained in the JTRO. Again, the State does not challenge Veronica's assertions that the JTRO did not establish any custodial rights. Rather, the JTRO restricted the parental and custodial rights both Raymond and Veronica had due to each of their relationships with their son.

The information, charging Veronica in this case, reads as follows:

> That the Defendant, VERONICA L CALVER AKA HANEY, on or between the 8th day of September, 2011 and the 10th day of October, 2011, in the County of Ada, State of Idaho, did intentionally and without lawful authority, take and/or keep and/or withhold, a minor child, . . . a child of the age of two (2), from Raymond Calver and who has joint custody and/or other parental rights arising from temporary restraining order regarding the child in CV-DR-2011-16503 and/or after commencement of an action relating to child visitation or custody but prior to the issuance of an order and where the defendant took the child out of state and where the child has not voluntarily been returned unharmed to Idaho.

11

Whereas the information stated Raymond had "joint custody," the jury instructions stated Raymond's "right to custody" may include those arising from "equal custodial rights of each parent." "Equal custodial rights," as defined above, are those rights to equal custody, services, and earnings of a child as a function of the parent/child relationship. "Joint custody" is defined as "an order awarding custody of the minor child or children to both parents and providing that physical custody shall be shared by the parents in such a way as to assure the child or children of frequent and continuing contact with both parents." I.C. § 32-717B.

We accept that the definitions of "equal custodial rights" and "joint custody" differ within the statutes. Nonetheless, both the information and jury instructions required the State to prove that Raymond had some custodial rights to the child that the defendant interfered with. Even if we were to assume for the sake of argument that this constitutes a variance, Veronica cannot show fundamental error. A variance is fatal only it if amounts to a constructive amendment, meaning the variance alters the charging document to the extent that the defendant is tried for a crime of a greater degree or a difference nature. *Wolfrum*, 145 Idaho at 47, 175 P.3d at 209. The wording in the jury instruction did not change the nature or degree of the offense with which Veronica was charged; it simply defined where Raymond's right to custody could arise.

Additionally, a variance may be fatal if the record suggests that the defendant was misled or embarrassed in the preparation or presentation of her defense. *Hickman*, 146 Idaho at 182, 191 P.3d at 1102. Veronica has not shown that she was misled in the preparation of her defense. Veronica rested her defense on trying to affirmatively prove she acted out of necessity, not by trying to show the State failed to prove that Raymond enjoyed some custodial rights, whether established because he was a parent or because of a court order, over the child that Veronica took, kept, or withheld from him. Even accepting that the definition of "right to custody" in the instructions differed from "joint custody" as stated in the information, Veronica failed to show this was not a harmless error.

## III.

## CONCLUSION

We conclude there was substantial and competent evidence to uphold Veronica's conviction for felony child custody interference. We further conclude the jury instructions were not erroneous and Veronica cannot show fundamental error due to any alleged variance between

the information and the jury instructions. Accordingly, we affirm the district court's judgment of conviction for child custody interference.

Judge GRATTON and Judge MELANSON **CONCUR.**