**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 34701**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **2009 Opinion No. 66** |
| Plaintiff-Respondent, | ) |
| | ) **Filed: October 13, 2009** |
| v. | ) |
| | ) **Stephen W. Kenyon, Clerk** |
| ERIC JASON HANSEN, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Michael E. Wetherell, District Judge.

Judgment of conviction for two counts of aggravated assault, enhanced by possession of a firearm, and unlawful possession of a firearm, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for appellant.  Dennis A. Benjamin, argued.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for respondent.  Rebekah A. Cudé, argued.

_____

SCHWARTZMAN, Judge Pro Tem

Eric Jason Hansen appeals from his judgment of conviction for two counts of aggravated assault, enhanced by possession of a firearm during the commission of the offenses, and one count of unlawful possession of a firearm.  For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

In late September 2006, a seventeen-year-old brother and his thirteen-year-old sister were waiting to cross the street on their way to the Boise Towne Square Mall.  There was a metallic blue sport utility vehicle (SUV) in the turn lane, and the driver of the SUV began making comments to the sister.  The brother responded and words were exchanged between him, the driver, and Hansen--who was a passenger in the front seat of the SUV.  The SUV turned in front of the siblings who then crossed the street.  As they continued down the street toward the mall, the SUV completed a U-turn and came back toward the siblings.  The SUV moved into the lane

1

closest to them but headed in the opposite direction, meaning that between the siblings and the SUV there were two lanes of traffic. As the SUV approached them it slowed down, and Hansen made and maintained eye contact with the siblings. When the SUV was even with them, Hansen put his arm out the window of the SUV, raised his arm above the car's roof, and fired at least one shot from a pistol.[1]

The siblings ran to the mall. At the mall, they later spotted Hansen and the driver of the SUV, and it appeared the two were looking for the siblings. The police were called and there was a high-speed chase before the SUV stopped. The driver and Hansen were arrested. An empty shell casing was found by the mall and, a week after the incident, a resident on the street where the SUV was stopped reported finding a pistol in her yard.

Hansen went to trial and a jury found him guilty of two counts of aggravated assault, I.C. §§ 18-901(b), 18-905(a); enhanced by use of a firearm, I.C. § 19-2520; and unlawful possession of a firearm, I.C. § 18-3316. Hansen appeals, arguing that the district court erred in instructing the jury and that there was insufficient evidence to sustain the jury's verdict.

## II.

## ANALYSIS

### A.     Jury Instructions

Hansen makes several claims regarding alleged errors in the district court's instructions to the jury. Hansen primarily argues that the district court erred in instructing the jury by including a definition of general criminal intent that was inconsistent with the element of aggravated assault which requires an *intentional* threat to do violence to the person of another. The state asserts that Hansen is precluded from complaining about the jury instructions on appeal because he failed to object to the instructions below.[2]

Ordinarily, a party may not claim that a jury instruction was erroneous unless the party objected to the instruction prior to the start of jury deliberations. I.C.R. 30(b). However, even

---

[1]     Both siblings testified that they may have heard two shots, but that it may also have been one shot followed by an echo.

[2]     The state also argues that Hansen is precluded from raising this claim under the doctrine of invited error because the jury instructions containing the elements of aggravated assault that he proposed are almost identical to the elements instructions given by the district court. The state's argument ignores that Hansen's major complaint is the inclusion of instructions defining "intent" and "willfully," instructions that were not requested by Hansen.

absent a timely objection to the trial court, claims of instructional error are reviewable for the first time on appeal under the fundamental error doctrine. *State v. Anderson,* 144 Idaho 743, 748, 170 P.3d 886, 891 (2007). Fundamental error has been defined as error which goes to the foundation or basis of a defendant's rights, goes to the foundation of the case, or takes from the defendant a right which was essential to his or her defense and which no court could or ought to permit to be inadvertently waived. *State v. Babb,* 125 Idaho 934, 940, 877 P.2d 905, 911 (1994). In other words, an error is fundamental when it "so profoundly distorts the trial that it produces manifest injustice and deprives the accused of his fundamental right to due process." *Anderson*, 144 Idaho at 748, 170 P.3d at 891; *State v. Lavy,* 121 Idaho 842, 844, 828 P.2d 871, 873 (1992). Jury instructions that fail to require the state to prove every element of the offense violate due process and, thus, rise to the level of fundamental error. *Middleton v. McNeil,* 541 U.S. 433, 437 (2004); *Anderson*, 144 Idaho at 749, 170 P.3d at 892.

However, even when a fundamental error has occurred, this Court will not reverse a conviction if the error was harmless. *Anderson,* 144 Idaho at 749, 170 P.3d at 892; *State v. Field,* 144 Idaho 559, 165 P.3d 273 (2007). A harmless error analysis may be applied in cases involving improper instructions on a single element of the offense or even when a court omits an essential element from the instructions to the jury. *Neder v. United States,* 527 U.S. 1, 9-15 (1999); *State v. Lovelace,* 140 Idaho 73, 79, 90 P.3d 298, 304 (2004); *State v. Lilly,* 142 Idaho 70, 72, 122 P.3d 1170, 1172 (Ct. App. 2005). Before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24 (1967). If, after examining the record, the reviewing court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error, it should not find the error harmless. *Neder,* 527 U.S. at 19; *Lilly,* 142 Idaho at 72, 122 P.3d at 1172. The test is whether the "record contains evidence that could rationally lead to a finding for the defendant with respect to the omitted element." *Neder,* 527 U.S. at 19. Relevant considerations include whether the element was contested at trial and whether the evidence on the element was overwhelming. *Neder,* 527 U.S. at 16-19; *Lilly,* 142 Idaho at 72, 122 P.3d at 1172. The government bears the burden of showing that the error had no effect on a defendant's substantial rights. *Lovelace,* 140 Idaho at 79, 90 P.3d at 304.

The aggravated assault offense with which Hansen was charged requires the state to prove that Hansen (1) made an intentional and unlawful threat by word or act; (2) to do violence

3

to the person of another; (3) with a deadly weapon or instrument; (4) and had the apparent ability to do so; and (5) that the threat created a well-founded fear that such violence was imminent. I.C. §§ 18-901(b), 18-905(a); *State v. Dudley*, 137 Idaho 888, 890, 55 P.3d 881, 883 (Ct. App. 2002). The district court gave the jury an instruction that defined assault as "intentionally and unlawfully" threatening by word or act to do violence to the person of another. The court also provided the jury with an instruction that gave a definition of general criminal intent. It stated: "Intent under Idaho law is not an intent to commit a crime but is merely the intent to knowingly perform the act committed." *See* Idaho Criminal Jury Instruction #305 and Comment thereto; *State v. Bonaparte*, 114 Idaho 577, 580, 759 P.2d 83, 86 (Ct. App. 1988).

Hansen argues that a statutory element of the offense requires that he harbor an intent to threaten the victims and that the instruction defining "intent" misinformed the jury that Hansen needed only to intend the "act," i.e. firing the weapon, and that the jury need not find that he actually intended to threaten. This error, Hansen contends, relieved the state of its burden to prove every material element of the charge of aggravated assault beyond a reasonable doubt.[3] As such, Hansen asserts that his due process rights were violated, his claim can be reviewed as fundamental error, and the error requires reversal of his aggravated assault convictions.[4]

We agree that Hansen's claim is reviewable as fundamental error because the jury instructions failed to require the state to prove every element of the offense of aggravated assault. *See State v. Rolon,* 146 Idaho 684, 691, 201 P.3d 657, 664 (Ct. App. 2008) (concluding fundamental error when the crime requires a finding of specific intent and jury receives instructions defining general intent). It was error to provide the jury with conflicting

---

[3] Hansen similarly argues that the inclusion of the definition of "willfully" lessened the state's burden of proof. The district court instructed the jury that "'willfully' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act or make the omission referred to." The term willfully does not appear in either the elements instruction for aggravated assault or in the definition of assault. Other than the definition, the only other use of the term willfully in the instructions given in this case was in an elements instruction for the lesser-included offense of disturbing the peace. Because willfully is not found in the aggravated assault instruction or relevant definitions, we find no error in the district court's inclusion of an instruction defining willfully.

[4] At oral argument before this Court, Hansen conceded that, even if this Court reversed his judgment of conviction for an improper jury instruction as to the aggravated assault charges, the illegal possession of a firearm conviction would remain intact.

instructions.[5]  Specifically, the elements instruction provided that aggravated assault required the state to prove Hansen harbored an intent to threaten the victims, but when read together with the definition of general intent, the jury could have concluded that it need only find that Hansen intended to fire the pistol in order to find him guilty.  Accordingly, we must determine whether the inclusion of the definition of general intent was harmless in this case.

Although there was no direct testimony related to Hansen's intent to threaten the victims, there was overwhelming circumstantial evidence of such intent.  Both victims testified at trial. The younger sister testified that the altercation began with the driver of a tall, metallic blue SUV yelling "hey, girl, what's up" to her.  The windows in the SUV were all down and there was a confrontation between the occupants of the SUV and her brother in which profane words and hand gestures were exchanged.  The sister stated that she watched the SUV turn in front of her at the light, drive down the street a short distance, complete a U-turn, and come back toward her in the closest lane of traffic going the opposite direction.  She further testified that both the driver and Hansen were staring at her and her brother; that the vehicle was moving slowly; and that, when the vehicle was even with her, Hansen "put a gun out the window and shot," all the while making eye contact with her and her brother.

The older brother testified consistently with his sister, but offered additional details of the encounter.  He stated that both Hansen and the driver of the SUV whistled and made comments to his younger sister, like "what's your number."  After a heated exchange, the last words heard from someone in the SUV were that they would be right back.  The SUV then drove a short distance and completed a U-turn.  The brother testified that he maintained eye contact with Hansen as the SUV approached again and saw Hansen raise a pistol above the SUV and fire.  He noted that Hansen was looking right at him as the SUV approached and when Hansen fired the shot.

There was also detailed evidence presented concerning what happened after the shot was fired and the siblings ran to the mall.  While the brother was standing outside of the mall he saw the SUV approach.  He testified that the SUV began driving towards him at a fast pace with tires squealing.  The brother retreated inside the mall and Hansen and the driver of the SUV followed

---

[5]      For future reference, far better would be an instruction that stated:  "Intent or intention is manifested by the commission of the acts and surrounding circumstances connected with the offense."  I.C. § 18-115.

him. The siblings testified that the occupants of the SUV appeared to be looking for them inside the mall. The sister testified that, at one point, she hid in the restroom to avoid detection. Additionally, the head of security at the mall testified about the mall's video surveillance system. Several photographs and videos taken from various surveillance cameras within the mall were admitted into evidence. The photographs and videos show Hansen and the driver of the SUV wandering around the mall, apparently looking for the siblings, and it appeared that Hansen had a firearm tucked into his waistband.

The brother eventually called the police from within the mall and a high-speed chase ensued with officers pursuing the SUV, which drove through a turn lane, went through a red light and, after traveling several blocks, eventually came to a stop. The officers found a shell casing in the street near where the siblings explained the shot was fired, and a woman who lived on the street where the SUV stopped reported finding a pistol in her yard about a week after the incident.

Furthermore, the intent to threaten element was not seriously contested before the jury in this case. Hansen presented no witnesses at trial. The majority of Hansen's cross-examination of the state's witnesses centered on how far away the SUV was from the victims, what the lighting and traffic conditions were like, and how the victims' testimony at trial differed slightly from the testimony they gave before the grand jury. Hansen's cross-examination focused primarily on supporting Hansen's theory that the argument was essentially between the older brother and the driver of the SUV, not Hansen. Similarly, Hansen's opening statement and closing argument attempted to shift the blame and focus away from Hansen and onto the driver of the SUV. Hansen did this by arguing that it was the driver who initiated the contact with the victims and it was the driver who turned the vehicle around. Hansen also contended that the state had not established proof beyond a reasonable doubt because the police had been superficial in their investigation by failing to conduct gunshot residue tests on Hansen and failing to obtain fingerprints from the pistol. Hansen did not argue to the jury that the state failed to prove that the gunshot was intended as a threat.

We conclude that the record contains no evidence that could rationally lead to a finding for Hansen with respect to the intentional threat element. Because we are able to determine, beyond a reasonable doubt, that the jury verdict would have been the same absent the error, we

6

conclude the inclusion of the definition of general intent in this case was harmless and did not contribute to the verdict. *See and compare Rolon*, 146 Idaho at 691-694, 201 P.3d at 664-666.[6]

## B.    Sufficiency of the Evidence

Hansen argues that the evidence presented to the jury in this case was insufficient to support a finding that Mr. Hansen intended to threaten the victims or that they could have reasonably believed violence was imminent. Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

As explained above, the evidence of Hansen's conduct both before and after the shot was fired could lead a jury to no rational conclusion other than that he intentionally threatened the victims. So, too, is the evidence more than sufficient to support a finding that Hansen's act of firing the pistol into the air created a well-founded fear in the victims that violence was imminent. The younger sister testified that she was afraid when the shot was fired and that she and her brother immediately ran over to the mall after the shot. In response to a question about why she did not immediately call the police, she also testified that "when something like this happens, I guess it is--your first instinct is to get away." The older brother testified similarly,

---

[6]    We take this opportunity to caution against the routine inclusion of definitions when the instructions containing the elements of an offense already define the terms they contain, when the definition conflicts with another instruction, or when no definition is necessary. Routinely including definitions can lead to the type of error that occurred in this case, where no definition of "intent" or "intentionally" really needed to be given to the jury. *See State v. Hoffman*, 137 Idaho 897, 900, 55 P.3d 890, 893 (Ct. App. 2002).

7

telling the jury that he was frightened when he saw the gun in Hansen's hand and heard the shot and that the entire encounter scared him.

On appeal, we will not substitute our view with that of the trier of fact on the reasonable inferences to be drawn from the evidence. Given the circumstances surrounding this event, we conclude that there was substantial evidence upon which a reasonable trier of fact could have found that the state sustained its burden of proving Hansen's actions created a well-founded fear in the victims that violence was imminent.

## III.
## CONCLUSION

Although the district court improperly included a definition of general criminal intent in the jury instructions, we conclude that such error was harmless beyond a reasonable doubt. Furthermore, there was more than sufficient evidence presented to the jury to prove Hansen's intent to threaten and create a well-founded fear in the victims. Accordingly, Hansen's judgment of conviction for two counts of aggravated assault, enhanced by possession of a firearm during the commission of the offenses, and unlawful possession of a firearm is affirmed.

Chief Judge LANSING and Judge GUTIERREZ, **CONCUR.**