Justice W. JONES,
dissenting.
The Majority holds that there was no error under the U.S. Supreme Court’s decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because I.C. § 19-2520E only reduces the punishment authorized. I respectfully dissent.
A. Because the Fact of Divisibility Increases the Maximum Authorized Statutory Penalty By Authorizing a Second Enhancement, There Was Apprendi Error in the State’s Failure to Submit the Issue to the Jury.
It is undisputed that the question of divisibility or indivisibility under I.C. § 19-2520E is one of fact. State v. Johns, 112 Idaho 873, 882, 736 P.2d 1327, 1336 (1987). Under Apprend,% “any fact (other than the fact of a prior conviction) that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435, 454-55 (2000). This is because “[i]t is unconstitutional ... to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.” Id. at 490, 120 S.Ct. at 2363, 147 L.Ed.2d at 455. The first question that must be resolved, then, is whether the fact of indivisibility or divisibility in I.C. § 19-2520E increases the penalty for a crime beyond the authorized statutory maximum. If it does, the burden of proof was on the prosecution to raise it, prove it beyond a reasonable doubt and submit it to the jury under Apprendi; and the failure to do all of those acts was error. The Court must then determine whether that unobjected-to error was fundamental under State v. Perry, 150 Idaho 209, 245 P.3d 961 (2010). The Majority holds that the § 19-2520E does not increase the penalty but rather only reduces the penalty and thus Apprendi does not apply. Justice Eismann concurs. Justice Horton believes that § 19-2520E is an. affirmative defense that was waived by Peregrina’s failure to raise it.
The prosecution did not attempt to prove divisibility of the two aggravated batteries, and did not submit the issue to the jury. The State contends it did not have the burden to do so. Justice Horton, in his dissent, agrees. The State relies on dicta in this Court’s decision in State v. Clements, 148 Idaho 82, 218 P.3d 1143 (2009), wherein the Court stated that “[b]y pleading guilty to both firearm enhancements, Clements waived the statutory, fact-based defense that the murder and attempted murder arose out of the same indivisible course of conduct under I.C. § 19-2520E.” 148 Idaho at 86, 218 P.3d at 1147. In that ease, Clements brought an I.C.R. 35 motion to correct his sentence based on the allegation that the court did not have the authority to impose two firearm enhancements for second-degree murder and attempted second-degree murder, because the crimes arose out of the same indivisible course of conduct. Id. at 83, 218 P.3d at 1144. Clements had pled guilty to both the underlying offenses as well as the firearm enhancements. Id. He did not raise the issue of indivisibility until his Rule 35 motion, and at that time, the district court reviewed the transcript of the preliminary hearing and found that both crimes had arisen out of the same indivisible course of conduct. Id. at 84, 218 P.3d at 1145. This Court stated that because Clements’ plea of guilty to the firearm enhancements waived all non-jurisdietional defects and defenses to those enhancements, he had waived the statutory, fact-based defense of indivisibility under I.C. § 19-2520E, and could not raise it for the first time at his I.C.R. 35 motion. Id. at 86, 218 P.3d at 1147. The Court eventually rested its holding on the proposition that the district court may not review the facts underlying an alleged “illegal” sentence at a Rule *542 35 hearing, and the Court’s statement that Clements had waived his defense under § 19-2520E by pleading guilty to the enhancements was dictum that did not affect the holding. Id. at 87, 218 P.3d at 1148.
Here, unlike in Clements, Peregrina pled not guilty to the firearm enhancements, and thus he did not waive his non-jurisdictional challenges to the enhancements. Rather, by pleading not guilty, “every material allegation of the indictment, information or complaint” was put in issue. I.C. § 19-1715. Peregrina did not “waive” his right to have a jury determine the issue of divisibility by failing to raise it. By failing to raise the issue or object to it below, Peregrina may have “forfeited” the issue under § 19-2520E, but he did not “waive” it. United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508, 518-19 (1993) (distinguishing “forfeiture” of a claim, which results from a failure to assert the claim in a timely fashion, and which does not prevent an appellate court from reviewing the claim for plain error, from “waiver,” which is the “intentional relinquishment or abandonment of a known right,” and which permanently extinguishes the right to raise the claim). As set forth in this Court’s decision in Perry, an asserted error in a criminal trial raised for the first time on appeal is still renewable under the fundamental error analysis even if it may have been “forfeited” below. Perry, 150 Idaho at 225, 245 P.3d at 977. Therefore it is not appropriate to apply the dictum in Clements characterizing the determination of the facts in § 19-2520E as waived here, where no “intentional relinquishment” of the determination on divisibility occurred. United States v. Polouizzi, 564 F.3d 142, 152 (2d Cir.2009) (holding that the defendant waived his right to challenge the jury instructions because in response to the judge’s proposed alternative instruction, the defendant indicated that the original instruction was satisfactory).
It is also noted that while I.C.R. 30(b) normally prohibits a defendant from challenging a jury instruction for the first time on appeal, “even absent a timely objection to the trial court, claims of instructional error are reviewable for the first time on appeal under the fundamental error doctrine.” State v. Hansen, 148 Idaho 442, 444, 224 P.3d 509, 511 (Ct.App.2009) (citing State v. Anderson, 144 Idaho 743, 748, 170 P.3d 886, 891 (2007)). Therefore, Peregrina’s failure to ask for an instruction on divisibility did not waive his right to challenge whether the lack of an instruction on the issue was error.
Both the State and the Majority conclude that § 19-2520E only reduces the penalty for the underlying crimes rather than increasing it and is thus not subject to Apprendi. Peregrina contends that this argument was already made by Arizona and rejected by the U.S. Supreme Court in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). At issue in Ring was a statutory scheme in Arizona in which a judge was required to find the presence of an aggravating factor in order to sentence a defendant convicted of first-degree murder to death. 536 U.S. at 604, 122 S.Ct. at 2440, 153 L.Ed.2d at 573-74. Arizona law specified that “death or life imprisonment” were the only sentencing options for first-degree murder, but that same statute explicitly cross-referenced another statute that required the finding of an aggravated circumstance by a judge before imposition of the death penalty. Id. at 604, 122 S.Ct. at 2440-41, 153 L.Ed.2d at 573-74. Ring argued that under Apprendi, he had the right to have a jury determine the presence of the aggravating factor beyond a reasonable doubt. Arizona argued that “death” was already the statutory maximum penalty for the jury’s verdict for first-degree murder under the language of the statute, and therefore the aggravating factor required to impose the death penalty did not increase the maximum penalty (beyond “death”) under Apprendi. Id. at 603-04, 122 S.Ct. at 2440,153 L.Ed.2d at 573-74.
The Supreme Court noted that “[i]f a State makes an increase in a defendant’s authorized punishment contingent on the finding of a fact, that fact — no matter how the State labels it — must be found by a jury beyond a reasonable doubt.” Id. at 602, 122 S.Ct. at 2439, 153 L.Ed.2d at 572-73. It reiterated that “the dispositive question ... is not one of form, but of effect.” Id. It found that even though the language of the statute stat *543 ed that “death or life imprisonment” were the punishments for first-degree murder, Arizona’s interpretation that the aggravating factor only reduced the sentence under the statute would render the rule of Apprendi “meaningless and formalistic.” Id. at 604, 122 S.Ct. at 2441,153 L.Ed.2d at 573-74. The Court held that the statute required that another fact had to be found in order to sentence the defendant to death, and therefore the maximum penalty authorized by the jury verdict was only life imprisonment. Id. at 602-04, 122 S.Ct. at 2440, 153 L.Ed.2d at 572-75. Thus, it concluded that the required finding of an aggravating factor exposed the defendant to a greater punishment, the death penalty, than that authorized by the jury verdict without the finding of an aggravating factor, life imprisonment, and thus under Apprendi, the facts underlying the aggravating factor were required to be determined by a jury beyond a reasonable doubt. Id. at 609, 122 S.Ct. at 2443, 153 L.Ed.2d at 576-77.
The Supreme Court reiterated this principle in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), holding that
[wjhether the judge’s authority to impose an enhanced sentence depends on finding a specified fact (as in Apprendi), one of several specified facts (as in Ring), or any aggravating fact (as here), it remains the case that the jury’s verdict alone does not authorize the sentence. The judge acquires that authority only upon finding some additional fact.
542 U.S. at 305, 124 S.Ct. at 2538, 159 L.Ed.2d at 414-15. It acknowledged that in both Apprendi and Ring, “the defendant’s constitutional rights had been violated because the judge had imposed a sentence greater than the maximum he could have imposed under state law without the challenged factual finding.” Id. at 303, 124 S.Ct. at 2537, 159 L.Ed.2d at 413. It also clarified that “the ‘statutory maximum’ for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jtvry verdict or admitted by the defendant.” Id. (emphasis in original). It noted the difference between factors that a judge has discretion to consider in imposing a lesser sentence within a statutorily defined range and facts that “pertain to whether the defendant has a legal right to a lesser sentence,” the latter of which is within “the traditional role of the jury,” and thus “must be found by a jury” under the Sixth Amendment. Id. at 309, 124 S.Ct. at 2540, 159 L.Ed.2d at 417.
' A recent ease decided by the U.S. Supreme Court under Apprendi tackled a similar but distinguishable issue to the one here. At issue in Oregon v. Ice, 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009) was Oregon’s statutory scheme for imposing consecutive, rather than concurrent, sentences when a defendant had been convicted of more than one crime. 555 U.S. at 164-66, 129 S.Ct. at 715, 172 L.Ed.2d at 522-23. Under the Oregon statute, sentences were required to run concurrently unless the judge found that the offenses did not “arise from the same continuous and uninterrupted course of conduct,” in which case the judge had the discretion to impose the sentences consecutively. Id. The Supreme Court found that the discretion to impose consecutive sentences rather than concurrent ones historically rested with the judge, not the jury. Id. at 167-69, 129 S.Ct. at 717, 172 L.Ed.2d at 524-25. It also noted that States have an interest in the development of their penal systems, and thus the Court should defer to Oregon’s decision to place discretion for imposing consecutive sentences with the judge absent a compelling reason not to do so. Id. at 169-72, 129 S.Ct. at 718-19, 172 L.Ed.2d at 525-27. The Court found that the Sixth Amendment did not inhibit States from assigning to judges, rather than juries, the finding of facts necessary to justify the imposition of consecutive, rather than concurrent sentences for multiple offenses. Id. at 166-74, 129 S.Ct. at 716-20, 172 L.Ed.2d at 523-29.
Here, I find that the fact of divisibility increases the maximum authorized sentence on the defendant when that defendant has been charged with multiple enhancements. The decision in Ice is not analogous. It revolved around whether a judge or a jury should have the discretion to decide if two imposed sentences should be served consecutively. The case here revolves around *544 whether the judge has the authority to impose an additional enhanced sentence at all, not just whether a judge may determine the facts necessary to decide whether to impose the sentence consecutively to the other sentences instead of concurrently. Ice, thus concerned a “sentencing function in which the jury traditionally played no part,” i.e., the discretion to impose a consecutive rather than a concurrent sentence. Ice, 555 U.S. at 163, 129 S.Ct. at 714, 172 L.Ed.2d at 521-22.
On the other hand, here it seems clear that § 19-2520E was intended by the Legislature to prohibit imposition of more than one enhanced sentence if indivisibility is found, not to place discretion of whether or not to impose the multiple enhanced sentences in the hands of a judge rather than a jury. Act of April 9, 1983, eh. 183, 1983 Sess. Laws. 496, 496 (stating that § 19-2520E was enacted “to provide that multiple enhancement penalties are prohibited.”) The intent of the statute is important in the determination of whether a fact is one that must be submitted to the jury by the State under Apprendi. United States v. O’Brien, — U.S. -, -, 130 S.Ct. 2169, 2180, 176 L.Ed.2d 979, 992-93 (2010); see also State v. Stover, 140 Idaho 927, 931— 32, 104 P.3d 969, 973-74 (2005) (looking to legislative purpose in holding that I.C. § 19-2521 was intended to give discretion to the judge to decide, based on the factors it lists, whether to place a defendant on probation or sentence him within a statutory prescribed range, and therefore Apprendi did not render it unconstitutional).
This Court has stated before that § 19-2520E “by its wording, limits the otherwise mandatory duty of the district court to enhance ‘multiple’ sentences under I.C. § 19-2520.” Johns, 112 Idaho at 882, 736 P.2d at 1336. However, I do not believe as the Majority does, that it provides a sentencing factor that “reduces” the punishment for the crime. Rather, I believe that it limits the authority of the sentencing court. If the crimes occur during an indivisible course of conduct, a second sentence is not authorized under any circumstances under the statute.
This is in contrast to the factors listed in I.C. § 19-2521, which “do[] nothing to infringe upon the sentencing court’s inherent power to impose or suspend a sentence.” Stover, 140 Idaho at 932, 104 P.3d at 974. The language of § 19-2520E expressly references the enhancement statutes, stating that it applies “[n]otwithstanding the enhanced penalty provisions in sections 19-2520, [listing other enhancement statutes].” Black’s Law Dictionary defines “notwithstanding” to mean “despite; in spite of.” Black’s Law Dictionary 1168 (9th ed. 2009). Accordingly, unlike in Ice, where the Oregon statute clearly intended discretion to decide the facts necessary to impose a consecutive sentence to rest with the judge instead of the jury, or Stover, where the statute clearly intended discretion to weigh a list of factors to lay with the judge, § 19-2520E is intended to limit the inherent authority of the court to actually impose the multiple enhancements charged under § 19-2520 and the other sections listed in § 19-2520E.
In other words, “despite” the enhancements that a defendant may be subject to under § 19-2520, only one enhancement may be imposed if the crimes occurred in an indivisible course of conduct. If multiple enhancements are charged, then a finding on divisibility becomes a prerequisite to the authority of the judge to impose more than one of them. Without that fact, the judge is not authorized to impose the second enhanced sentence. Blakely, 542 U.S. at 305, 124 S.Ct. at 2538, 159 L.Ed.2d at 414-15 (“The judge acquires that authority [to impose an enhanced sentence] only upon finding some additional fact.” (emphasis added)); Ring, 536 U.S. at 602, 122 S.Ct. at 2439, 153 L.Ed.2d at 572 (“If a State makes an increase in a defendant’s authorized, punishment contingent on the finding of a fact, that fact — no matter how the State labels it — must be found by a jury beyond a reasonable doubt.” (emphasis added)). As a result, the fact of divisibility increases the maximum authorized statutory penalty a defendant will be exposed to by authorizing the second enhanced sentence. Ice’s second “twin-consideration,” the respect for a state’s sovereignty in enacting its own penal system, would thus also be furthered by interpreting § 19-2520E in the way it was clearly intended by the Legislature: to limit the authority to impose *545 multiple enhancements when the underlying crimes occur in an indivisible course of conduct. Ice, 555 U.S. 160, 167-69, 129 S.Ct. 711, 717, 172 L.Ed.2d 517, 524-25.
Further, I fail to see how the absence of authority to impose a second enhancement can possibly “reduce” a sentence. By definition, a sentencing enhancement increases the maximum penalty. Black’s Law Dictionary defines “enhancement” as “[t]he act of augmenting.” Black’s Law Dictionary 609 (9th ed. 2009). A finding that the crimes occurred during an indivisible course of conduct simply means that the court does not have the authority to increase or augment the sentence. That finding does not itself “reduce” the sentence. Failure to augment is not equivalent to reduction.
The Majority’s interpretation of indivisibility as a fact that only reduces the sentence falls into the same “formalistic” argument that Arizona attempted to put forth in Ring, merely focusing on the form of the words in the statute rather than their obvious effect to limit the authority of the sentencing court to impose multiple enhancements. By the State’s and the Majority’s logic, the Legislature could simply rewrite facts that have the effect of authorizing an increase in the maximum penalty on the defendant by phrasing them in the negative and then declaring that they only “reduce” the penalty in order to circumvent the protections of Apprendi For example, the Legislature could choose to say that every aggravated assault carries a maximum penalty of thirty years, but if the defendant did not use a firearm during the commission of the assault, he can only be sentenced for fifteen years. Thus, under the logic of the State and the Majority, the fact that a defendant used a firearm would not be a fact that increases the maximum penalty because a formalistic reading of the words would lead to the conclusion that “not carrying a firearm” only decreases the penalty. This ignores the obvious purpose and effect of a statute such as that hypothetical one, just as interpreting indivisibility as a fact that merely “reduces” the maximum penalty ignores that the purpose of § 19-2520E is to limit the authority of the sentencing court to impose a second enhancement.
To take this hypothetical a logical step further, under this rationale the Legislature could pass a statute where the crime of causing death was subject to a maximum penalty of life in prison, but the judge could reduce that maximum penalty if the defendant did not intend to kill or killed in the heat of passion. By the State’s argument, not having the intent to kill, or killing in the heat of passion, would merely be facts that would reduce the penalty for the crime. In Apprendi the Supreme Court specifically stated that such a statute would unconstitutionally allow state legislatures to “circumvent” constitutional protections “merely by ‘redefining] the elements that constitute different crimes, characterizing them as factors that bear solely on the extent of punishment.’” Apprendi 530 U.S. at 485, 120 S.Ct. at 2360, 147 L.Ed.2d at 452 (quoting In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (brackets in original)). Interpreting the fact of indivisibility as one that only decreases the maximum penalty focuses on form rather than effect, and would allow the State to circumvent the protections of Apprendi.
Carrying a firearm is a fact that authorizes a sentence enhancement because the Legislature has deemed that act one that increases the defendant’s culpability for the crime. Committing a murder with the intent to kill rather than in the heat of passion similarly increases a defendant’s culpability, thus authorizing a greater punishment for that more culpable crime of murder rather than the less culpable crime of manslaughter. Just the same, committing two crimes in divisible courses of conduct has been deemed by the Legislature to be more egregious than committing those crimes in one indivisible course of conduct. The district court does not have the authority to impose a second enhancement if the crimes were committed in one indivisible course of conduct. The district court may only impose the second enhancement if the crimes were committed in divisible courses of conduct, thereby increasing the defendant’s culpability in the same way that carrying a firearm or acting with the intent to kill would.
*546 The Supreme Court has addressed that these types of facts, ones that go to the way the offense itself was committed, are exactly the type of facts that Apprendi requires to be found by a jury, in contrast to facts that focus on the characteristics of the offender. In its recent decision in United States v. O’Brien, — U.S.-, 130 S.Ct. 2169, 176 L.Ed.2d 979 (2010) the Court noted the important difference between a fact that constitutes a “sentencing factor” which does not implicate Apprendi, and a fact that must be considered an element of the offense under Apprendi In interpreting a federal statute in which carrying a firearm during an offense was a crime punishable by a minimum of five years, but the mandatory minimum was increased to thirty yeai-s if the firearm was a machinegun, the Court stated:
Sentencing factors traditionally involve characteristics of the offender-such as recidivism, cooperation with law enforcement, or acceptance of responsibility. [Castillo v. United States, 530 U.S. 120, 126, 120 S.Ct. 2090, 2093-94, 147 L.Ed.2d 94 [100] (2000)]. Characteristics of the offense itself are traditionally treated as elements, and the use of a machinegun under § 924(c) lies “closest to the heart of the crime at issue.” Id., at 127, 120 S.Ct. [at 2094, 147 L.Ed.2d at 100].
— U.S. at -, 130 S.Ct. at 2176, 176 L.Ed.2d at 988 (emphasis added). Divisibility and indivisibility have nothing to do with the offender and are also a “characteristic of the offense itself’ because they go straight to the way in which the offense was committed. In contrast, the Court in Apprendi noted that a fact such as whether the defendant is a “war veteran” would be a typical mitigating sentencing factor that does not implicate the Apprendi rule. This is directly in line with the Court’s later authority in O’Brien, because the fact that a defendant is a war veteran is clearly a characteristic of the offender and not of the offense. Divisibility of the crimes is a characteristic of the offense that increases the sentence on a defendant by authorizing a second enhancement. Under Apprendi, it was a fact that should have been raised by the State, submitted to the jury, and proved beyond a reasonable doubt.
Thus, I would find error in the State’s failure to submit the fact of divisibility to the jury.
B. The Failure to Submit the Issue of Divisibility to the Jury Was Fundamental Error.
Under State v. Perry, 150 Idaho 209, 245 P.3d 961 (2010), if an alleged error was not followed by a contemporaneous objection, it will only be reviewed by this Court under the fundamental error doctrine. Id. at 228, 245 P.3d at 980. This doctrine involves a three prong inquiry by which the defendant must persuade the appellate court that the alleged error: (1) violates one of the defendant’s unwaived constitutional rights; (2) plainly exists, without the need for additional information not contained within the appellate record; and (3) was not harmless. Id. Because I believe the fact of divisibility increases the maximum authorized statutory penalty for multiple enhancements, then under Apprendi I believe Peregrina’s Sixth Amendment rights were violated by the State’s failure to submit the issue to the jury. Apprendi 530 U.S. at 476, 120 S.Ct. 2355, 147 L.Ed.2d at 446-47. As stated in the section above, Peregrina did not waive these rights by intentionally relinquishing them.
The error also plainly exists because it is clear from the record that a determination on divisibility was not submitted to the jury.
Finally, the error was not harmless. In order for an error to be deemed harmless, this Court must declai'e a belief beyond a reasonable doubt that the error did not affect the verdict. Perry, 150 Idaho at 227, 245 P.3d at 979. Here, because I believe that the jury was not instructed on an issue that should have been submitted to it under Apprendi the error was not harmless unless, pursuant to Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), “the reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error.” Perry, 150 Idaho at 223, 245 P.3d at 975 (quoting Neder, 527 U.S. at 17, 119 S.Ct. at 1837, 144 L.Ed.2d at 52). Here, the State did not *547 provide “overwhelming evidence” that indicated the two batteries occurred in divisible courses of conduct. United States v. Cotton, 535 U.S. 625, 634, 122 S.Ct. 1781, 1787, 152 L.Ed.2d 860, 869-70 (2002) (Apprendi error was harmless because there was “overwhelming and uncontroverted evidence” of the fact that should have been charged and submitted to the jury). In fact, a review of the record shows that the evidence, if anything, indicated that the crimes likely did occur in the same indivisible course of conduct, although no determination either way was made by the jury.[1] The error was not harmless.
I believe that the State was required to prove divisibility beyond a reasonable doubt and submit the issue to the jury before the district court had the authority to impose a second enhancement. It did not do so. Therefore, I would vacate his sentence and remand to the district court for a jury determination as to whether the crimes occurred during divisible courses of conduct, followed by resentencing consistent with that jury determination.

. Mr. Ramirez testified that right after he felt Mr. Garcia fall down and hit the back of his legs, he turned around and saw Peregrina pointing the gun down at Mr. Garcia. Once Mr. Ramirez saw Peregrina pointing down at Mr. Garcia, Mr. Ramirez took a step toward Peregrina and was shot by him. Jay Cogle, an eyewitness, testified that he saw Peregrina strike Mr. Garcia, "br[ing] his hand down towards [Mr. Garcia]” and when Mr. Ramirez lunged at Peregrina; he saw Peregrina shoot Mr. Ramirez in the chest. Frances Garcia, another eyewitness, testified that she saw Mr. Garcia fall down, saw Mr. Ramirez rush to him and saw Mr. Ramirez get shot in the chest.